Good morning, your honors. John Ates or plaintiff appellant Dustin Rollins. We are asking this court to vacate the judgment that was entered under Rule 58 by the District Court of Arizona and allow a, to hold that the District Court of Arizona erred in disallowing an amendment of our pleading and to remand the case. We believe at that point the case then travels to the JPML who remands it back to the Northern District of Georgia. We believe this court has jurisdiction to do so because a Rule 58 final judgment was entered on the docket pursuant to Rule 79A. That disposed of some of the claims in the case, but not all. Now we understand that in the Wood case, which was not cited in our supplemental briefs, but should have been, that this court said in the routine case we should have a final judgment that the District Court of Arizona should have a final judgment. The reason for that is to avoid piecemeal appeals. This is anything but a routine case, given what JPML did in its conditional transfer order. And reviewing the District Court of Arizona's judgment entered pursuant to Rule 58 would not entail piecemeal appeals because it is this court and perhaps only this court that can review the District Court of Arizona's judgment and order. But what do we do with the fact that there's a portion of the case now that's pending before the transfer court? As I understand it, there's been no litigation in that case since it was sent back there, but it's still there, right? Let me disagree with a factual point of your premise, if I may, Judge Wendt. That is, we don't believe that case is back in Georgia yet. What the District Court did was enter an order, and it instructed the clerk to enter a final judgment, which the clerk did on May 25th, late in the day on a Friday. It also ordered the District Court to file that order and send the case back to the Northern District of Georgia. The clerk did not do that. We filed our notice of appeal on Memorial Day on Monday before the clerk could effectuate what the judge ordered it to do. So the case was frozen, and it was frozen for a reason. If we did not file that notice of appeal, that judgment potentially traveled back to Georgia and potentially became non-reviewable on appeal, because the 11th Circuit would be sitting trying to review a District Court of Arizona order and judgment, which generally is... I'm not following you. Why would the judgment go back to Georgia? If the judgment was deemed non-final, it would go back. Well, why? If the judgment... Why would it go back? Because the entire... My understanding, Judge Tashman, is the entire file gets transferred. Well, who said that? Well, I don't know who says that, because of what the... That's just an assumption on your part. I don't think I agree with that, that the judgment goes back in that case. But in any event, because you say you froze it, I mean, you're virtually admitting there's no final judgment here, right? The rest of the case is still pending under your theory in Arizona. There is a final judgment in the sense that, practically speaking, some of the claims that the District Court in essence severed were decided, but not all of them. Only some of the claims were severed, but even if you call that a final judgment, it didn't dispose of all the claims against all the parties, right? I agree, Your Honor, because... But the problem is we have a civil judgment under Rule 58 sitting on the docket. Right. So why don't you get the rest of the case decided? Because who reviews that judgment? That's the problem. Well, a different question is, why didn't you ask Ed Talbark for 54B? Because if the clerk entered that order transferring the case, it became a procedural morass. It is a procedural morass. We didn't avoid that problem. Right. But we didn't want to further deepen or thicken the morass. And so what we tried to do was freeze it and say, let's figure this out. We couldn't even file a Rule 59E motion to reconsider the judgment, because potentially that judgment goes to Georgia. Did you file for clarification? Because the parties had treated it as frozen, because you said you filed your notice of appeal, and so the transfer back to the transferor court, in your view, never really occurred. But it seems to me to be very unclear as to procedurally what happened and how to interpret that. Did you go before Judge Seaborg and say, look, we need clarification, because now we need to clear this up for purposes of taking up an appeal? Our view was he lost jurisdiction upon the filing of the notice of appeal. And had we not filed a notice of appeal, then we weren't before him, because under his view of the law, he had the power of the JPML, and he already sent it back. So we couldn't file a Rule 59 motion. Our Rule 59 motion, I believe, would have transferred to Georgia, and then I'm asking the Georgia court to alter and amend the judgment entered by Judge Teelberg in Arizona. And there's potential issues with doing that as well. What we thought was the safer course was to freeze it. If you look at the Northern District of Georgia docket, it still says that case is terminated. And in the Fourth Circuit case of Wilson Cook, which we cited in our supplemental brief, it follows the majority rule, if it's not followed by all circuits, and that is a transfer. This is a 1404 transfer, not a 1407 transfer. But a transfer is not effectuated until the file is transferred. That file was not transferred here. I understand that creates some other issues here. But we believe this Court, taking a pragmatic approach, and this is not a routine case as in the Wood case, which was decided by this Court, it can view this judgment as final. It can find that Judge Teelberg abused his discretion in not allowing an amendment of the complaint. And we believe we should be allowed to amend the complaint to conform to the U decision by the Georgia Supreme Court, which came out this year, which certainly, we admit, got rid of two portions of our 16, of our Georgia wrongful foreclosure statutory claim, but actually supports part of that claim in that proper notice was not provided by MERS. I'm not criticizing your tactical judgment by what I'm about to say. You're kind of in a bind. You're trying to figure out what best to do. And I have to say, it's not entirely clear. So I'm trying to figure out, okay, how should the system work consistent with 1407, consistent with 1291, consistent with Rule 54B, and so on. And I'm very sensitive to the problem that you've addressed. Well, what happens if we don't appeal from Judge Teelberg, it goes back to Georgia, the Georgia court finally finishes, and then we get a final judgment as to all claims and parties. We're appealing them not to the Ninth Circuit. We're appealing Judge Teelberg's order as well as the Georgia District Court order to the Eleventh Circuit. What's wrong with that? Well, by itself, I don't think anything's wrong with it. But considered in combination with the other cases in front of the MDL court, there is something wrong with it. And that is, well, there are going to be other appeals. In fact, most of them are going back to district courts within the Ninth Circuit. So all of a sudden, we're having two different circuits reviewing Judge Teelberg's order, maybe coming to different conclusions. That sounds like a mess. Now, one way to handle that mess is to take a 54B appeal from Judge Teelberg. That comes back, and the cases get scattered back to wherever they came from. I agree with you. The problem we faced on that approach, why we couldn't take that approach, was the Fourth Circuit and D.C. circuits allow an implicit assumption of a 54B certification. The Seventh Circuit says, no, it has to be explicit. I, in two days, couldn't find whether this court had ruled on that. So if this court had taken the position that it's implicit that a Rule 54B certification was entered by Judge Teelberg because he did what he did, maybe that's the way out of it. But again, we couldn't take the risk of being in the Eleventh Circuit who may say, we can't review what the District Court of Arizona did. Did you cite those cases that have the implicit 54B certification? If you look at TechnoSteel, which was cited in our supplemental brief, it cites Ruber v. United States, which is a D.C. circuit case, which... Hang on a second. I'm just trying to catch up with you here. TechnoSteel. TechnoSteel is a Fourth Circuit case. It cites Ruber, which is a D.C. circuit case. Which you cite also. Ruber's in your brief. That's correct, Your Honor. And Ruber, as I read it, says, look, the court had not formally directed entry of final judgment under 54B, but it reviewed it as if it was a final judgment under 54B. So that's why I stood up here in front of Your Honor saying, you've got jurisdiction here. So you think that there's authority in the other circuits, if we're just willing to follow it, that we can treat this as an implicit 54B, even though Judge Schauberg didn't say anything about it? That's correct. So I hope you further appreciate, while we had this foot race to the courthouse, to file this thing before the clerk could effectuate what the district court ordered it to do. That was further reason why we did what we did. No, I don't appreciate that. And the reason is this. This is what you could have done. You could have taken an appeal to the Ninth Circuit under the implicit 54B rule and at the same time filed a motion before Judge Tilburg for a certification. But what happens if this court rules it has to be an express determination under 54B? Then the case is going back, and I'm stuck in front of the Eleventh Circuit. Then you ask for a partial remand so you can get a ruling from Tilburg on whether he'd grant a 54B. If I need to go that route, Judge Tushma, I certainly will. This is not clear. And if we chose the wrong route, I apologize. But this court, from our research, had not given explicit guidance on what to do in this area of the law. I think that's a fair statement of our law, rather non-existent law. Understood. I see I have about two and a half minutes left. I'd like to reserve to cover the merits on rebuttal unless this court has any other jurisdictional procedural questions. Let's put it this way. We've taken a lot of your time on this jurisdictional point because of its importance. Why don't you give us a quick review of your argument on the merits so that the other side knows what they need to address, and then you can have a genuine rebuttal. We'll make sure you get a yes to say what you need to say. I appreciate that, Your Honor. Our theory was not the typical split-the-note theory. Georgia has a unique corporate fiduciary and trust statute that allows only enumerated corporations or entities to act under Georgia law. That statute expressly says administering property falls within its purview. We allege that what happens when MERS steps in as a beneficiary, it is administering property within the meaning of that statute, so the security deeds become void. And it certainly is administering property within the meaning of that corporate fiduciary. Tell me why you did not foreclose your claim. You did not decide the question. You only looked at a 1662.2 issue of do you have to hold both the note and the deed, and it said no. And it looked at the notice provision of what has to be included within the notice provision, and it clearly said it has to be the entity with full authority, quote, full authority to modify or negotiate the terms of that note. Now, we believe, we have alleged facts that show MERS does not have full authority to do that, and if you look at footnote two of Judge Teelburg's opinion below, he says the letter at issue in that regard says MERS and Aurora Loan Services have full authority. Well, clearly two entities cannot have full authority to negotiate the terms of the note, and if it's within a Fannie Mae-backed security, then it's going to be that trustee or Fannie Mae or some other entity that sits in that position of trustee, if it hasn't been bought out of the trust, to negotiate the terms of that note. And we believe that occurred. We don't have facts in that regard, though, because, and that highlights the error Judge Teelburg engaged in because he said we can't amend, and yet that's a clear part of this statutory claim. And that also relates to our declaratory judgment claim because we're asking that the court declare that these deeds, these security deeds are invalid. MERS cannot act as a corporate fiduciary under Georgia law and Georgia's trust law. So we believe just merely putting it in the beneficiary role violates the law, but certainly when it forecloses and sells the property and then remits it to someone else, it's acting in violation of the corporate fiduciary statute. So for those reasons we ask. So now we have your basic point. The other side now has everything to respond to, and we'll give you a chance in rebuttal. Thank you, Your Honor. Good morning, Your Honor. Bobby Brochin on behalf of Mortgage Electronic Registration Systems, Inc. and MERS Corp. holding Inc. its parent. I think the best way to approach it is there were three general issues that had been alleged in the complaint. One, that MERS could not initiate the nonjudicial foreclosure because it wasn't a holder of the note. Two, because MERS was identified as the secured creditor, that violated the Georgia statute. And three, MERS could not act as a corporate trustee or fiduciary in violation of a criminal statute in Georgia. Those issues were all transferred over to the MDL. Judge Steelberg considered all three of those issues. On the first two issues, whether MERS could be the holder of the note, needed to be the holder of the note in order to foreclose, and whether MERS had to be identified as the secured creditor, the court, Judge Steelberg ruled no, they don't, and dismissed the complaint. On the third issue, the corporate fiduciary and trustee, which counsel referred to, he remanded that issue back to the Northern District of Georgia by directing the clerk did not do that, and that was back in May of 2012, I believe, and nobody did anything, including the plaintiff, to pursue the corporate fiduciary issue that counsel alludes to in the Northern District of Georgia. But Judge Steelberg did decide the first two issues, that is, does MERS have to be the holder of the note to initiate this nonjudicial foreclosure, and does MERS violate the statute for identifying itself as the secured creditor? On those two issues, the Ewe decision by the Georgia Supreme Court disposes of them. It is as clear as can be that the Georgia Supreme Court came down and said no, MERS does not have to be identified as the secured creditor, because the plain language of the Georgia statute says that who has to be identified in the notice of foreclosure sale is the person who can modify the loan or negotiate the terms of the loan. And if that person, according to the Georgia Supreme Court, is someone other than the holder of the security deed, which in this case it was, not MERS, and it is the servicer or the attorney, your notice of sale has to identify who that person is that can modify the loan. And in this case, the notice of sale, that was issued, which is on the record, and is at excerpts of record 88, that's exactly what this notice of sale did. It identified, pursuant to the Georgia statute, that it was Aurora Loan Services who had the authority to modify or negotiate the terms of the loan, and it provides that servicer's name, address, and phone number in complete compliance with the Georgia statute. On the second issue, as to whether MERS has to be the holder of the note or somehow have some interest in the note, again, the Georgia Supreme Court was extremely clear in saying, no, you do not have to identify who the secured creditor is in your notice of sale, and you don't, you simply have to, excuse me, you don't have to identify who the holder of the note is, because the holder of the note is not required to do so. Now, let's get to the hard part. Jurisdiction. So the judge then says, okay, I'm dismissing that complaint on those two issues, not on the third issue. And on those two issues, he issues his order of dismissal, and he directs the clerk of the court then to enter a judgment on those two issues. And in that same dismissal order, he says, you know, I made a mistake, essentially, in not remanding the issue of the corporate fiduciary back to the northern district of Georgia. So I am, in his dismissal order, he says, I am remanding that issue back to the northern district of Georgia. He then directs the clerk to enter that judgment. The clerk enters the judgment, which, of course, says that the issues have come before the court, judgment has entered in favor of the defendants, and the plaintiffs don't take anything by virtue of that. In our view, that's a Rule 54B partial final judgment that was entered that disposed of one or more of all of the claims that had been decided. That 54B judgment was entered. The plaintiffs take an appeal of that, invoking this Court's jurisdiction because of a partial final judgment under 54B, and this Court, I believe, properly has before its jurisdiction of those two issues. I have to say that I have trouble with the notion that we should find a 54B certification by the district judge when the district judge says nothing about it. Because 54B certification requires judgment by the district court, that there's no just reason for delay. And I would like to know what the district judge thought about whether an interlocutory appeal was proper, rather than just say, well, you know, it certainly would be a good idea from my perspective. I'd kind of like to know what his perspective is, because that's what the Rule says. That's correct. That is what the Rule says. And the Rule, I suppose, when it's a 54B judgment, has two requirements. One is to direct the entry of a judgment to the clerk to enter judgment in favor of the defendants for part or some of the issues. The judge did do that. He did direct the clerk in its order to enter that judgment, and that judgment was entered. The judge did not, you're correct, indicate, I guess, the second part of the Rule, which says is there some sort of statement that there's no just reason for delay. I mean, in fact, there's nothing to suggest that Judge Chalmers even thought about Rule 54. No, except this. This does come in the context of the MDL cases, and he handled hundreds of these. And in the one of Robinson, the one that we actually heard on appeal yesterday, and the order of dismissal, which was the first order of dismissal he entered in these MDL, he did have a Rule 54 certification there and went through in detail the reasons for entering a partial judgment, including the direct finding that there was no just cause of delay. Isn't that all the more reason to conclude in this case there's no 54B certification? Because he does so, you know, on the record when he wants to. That is one conclusion you could reach, that if he did it in the Robinson case but didn't do it in the others, that perhaps he didn't conclude for these cases. And there were hundreds of them that, not hundreds, but tens of them, where he did enter judgment pursuant to this. But on the other hand, he did direct in his orders that a judgment be entered, and judgments were entered in all of those individual cases, which said that the direct judgment entered in their favor and that the plaintiff shall take nothing, which is the other half of the 54B requirement. What Judge Teelburg did not do, and you're correct as in this one, is make the express finding that there's no just cause for delay. Whether you would imply that by not saying it in all these instances means he didn't think so because he did so in Robinson or because he did so in Robinson and just assumed that all the others would follow suit, I don't know what he was thinking at the time and it's hard to go back. It seems to me, based on the entire set of the cases, that he did intend for this judgment that was entered for the clerk to be a 54B judgment, even though he did not make the express finding of just cause for delay. I don't know. If we conclude there's no appellate jurisdiction, then for practical purposes, the MDL proceedings are over, aren't they? If you conclude that there is jurisdiction. No jurisdiction on appeal. In other words, all of his orders are final now and the MDL proceeding is over. Is that right? I think the MDL proceeding has been closed. If you didn't have jurisdiction, I don't know if you'd send it back because you don't have jurisdiction and then the court would have the outcome. No, no. What we do in that case, we just dismiss the appeal. Dismiss the appeal. So that means, you know, there's a final. Whatever that court's done is final to that court. I suppose that would be the outcome. Or maybe, I mean, if we dismiss the appeal because we say that there's no 54B, certainly not explicit and we are unwilling to find one implicit. I say if. I think what that means is the case goes to Georgia. The Georgia court decides the one remaining issue. And then it seems to me as though because there had been no appeal taken from the interlocutory order, then an appeal would lie from the entire judgment, even though it was the MDL court that decided the first two issues. I think those three issues then all go up on appeal from the Georgia district court. Although this is a judgment entered in favor of the court. But the premise is this is not a final judgment. I mean, it's like it went to two different courts. But if you take away the interdistrict or intercircuit problem, you see, for example, District Judge A has the case for a while, enters judgment dismissing three claims. Two claims remain. District Judge A resigns from the bench. District Judge B picks up the case, then decides the others, and we finally get a judgment as to all of them. I mean, everything is open on appeal. Because there was no 54B as to the first three issues, there was no attempt to take an interlocutory appeal. I mean, it doesn't seem to me that an appeal is foreclosed from the Georgia district court on anything, which is part of my problem as to why I don't think it's a good idea to have appeals from the MDL decision going up to the Eleventh Circuit, and from the same MDL decision, at least principles of the same MDL decision, going up to us. Right. I mean, the decision from the MDL court should go to this court. I mean, for review. Well, at least it should go to a single court. And because it's in Arizona, it sounds like this is the best one. Yes. And that's why we seem to think with all those circumstances that this is a 54B judgment. It's only defect in recognizing it is, is there is no express finding of just delay. I think you can read from the record that the court intended that, or perhaps send it back to ask if the court did intend it to be entered as a 54B judgment. I'm not sure what the district court intended, given that he did issue 54B certification in Robinson and didn't address it one way or the other. But following up on Judge Fletcher's question, I suppose if we were to dismiss the appeal and this goes back, and then whatever's left is then litigated in Georgia, and it goes up on the Eleventh Circuit, the Eleventh Circuit may actually have viewed the decision on these particular claims as implicitly 54B certified, and that would be messy. That would be messy. I don't know what we would do because it's one against the other, but it's back to Judge Ford's comment that, and Fletcher's comment in essence, that the Ninth Circuit should consider the review of the MDL's decision on these two issues. I mean, these were the two issues that were transferred by the judicial panel because they involved MERS, and these two issues were decided. The Georgia Supreme Court has ruled on me. The appellant in this case submitted to this court for judicial notice the questions that were going to be certified in you because this court should consider what the Georgia Supreme Court did in that case as dispositive, and it is dispositive. So it seems that the most effective or efficient way for this court both to review it is that this was a 54B partial final judgment. As I said, I don't know, as you mentioned, what Judge Teelburg was thinking as to whether there was delay, no just cause for delay for the purposes of an appeal. We could go back and ask him, I suppose, but it seems to me from the record that he did intend for this to be a partial final judgment for the purposes of taking an appeal to the Ninth Circuit on those two of the three issues. Now, you may or may not be able to help on this one, and if I were to do some more research, which I suspect we're going to have to do, we will eventually come to know this. The experience I've had with JPML orders is somewhat limited, but I've never seen a case in which the JPML takes a case and splits it from the get-go in an order that says these claims go to the MDL court, these claims are not transferred, and we remand those claims to the district court without, of course, specifying, but they give a general principle as to how you divide up the two piles. Have you ever seen a JPML order like that before? We did some research, too, to try to find out what that procedure was, and we found very little. We did find one case, I think regarding countrywide, which did split the claims and the court, and I don't have that site in front of me, but the court essentially said, well, someone has got to decide how those issues are split, and it most logically would lie with the transferee court, because what the judicial panel did, it's not that it didn't send certain claims, it sent all of the claims and then said we're remanding back, I suppose, those that don't relate to MERS or deal with the formation, deal with loan collection and origination issues. I read the initial JPML order. What they say is that we, the JPML panel, remand right now the origination and collection claims unrelated to the operation of MERS. And then, of course, Judge Talborg is the one who does the sorting to figure out, in a sense, what has been done, but it doesn't look to me as though the order remanding to the transferor court was really done by Judge Talborg. It was done by the JPML order that he's then just implemented. I think that's exactly right. I think that what Judge Gilbert says in his orders, he says I'm not remanding these claims back. The judicial panel did that. I'm just trying to figure out which claims I have. Because I can't consider the claims dealing with origination and loan collection because the judicial panel has remanded those. So they're all over here, but I've got to send back the ones because I don't have jurisdiction over those ones that were remanded because the JPM panel order had the word simultaneously remanded back. My impression of JPML orders is that they typically simply send the entire case or a whole bunch of cases to the MDL court. The MDL court decides the common issues. If an individual case with the common issues decided, decides to settle, or if the MDL court decides to grant 12B6, there's everything in it, fine, it does so. If it doesn't want to, it can send it back. And that avoids the problem of this darn split that's so puzzling to us. Yes, and it was an arduous process. What Judge Tilburg did do I'm a little sorry that somebody didn't mandamus the JPML panel. Well, that probably under 1407 was the only and most appropriate relief, at least to seek some clarification on that issue. But for Judge Tilburg's part, I think he was just dealing with what was sent him. From an administrative point of view, he was just saying, I don't have jurisdiction over these claims that had already been remanded. So I am Did you participate in the JPML proceeding? And where did this suggestion come from, that they be split in this way? It came from the order that we received. I don't believe it was discussed or articulated in any way, either in the papers or at the hearing itself. I think this was their ruling in opposition, because people were saying, no, this really isn't a MERS, because there's these issues dealing with loan origination and collection practices. But the idea of splitting it was not teed up as an issue for either how to do it or if it even should be done. They just did it, as you can tell out of the blue. But at that point, nobody says, hold the phone. Nobody said, hold the phone. And then when they got transferred, what Judge Tilburg said to us as MERS counsel, he says, okay, I've got to administer this. So you, MERS, file a motion to at least tee up what issues you believe I don't have jurisdiction of or do have jurisdiction of. Give everybody a chance to weigh in on what that is. The basic premise that these individual cases be split so that some claims go somewhere, other claims stay back, that was never challenged. No, it was never challenged or never raised. And nobody, by the way, when Judge Tilburg rendered his decisions, raised any challenge to it at all. In fact, the first challenge we had was in the Robinson appeal that we heard yesterday and decided. Before that, no one ever objected. And for the most part, very few, particularly plaintiffs, objected to the decision of what he actually did in deciding which claims belonged where. Okay. Thank you, though. Good. We promised you a chance for about two minutes on the clock. Real quickly, to your point about what the JPML did, it has not done this in many cases. It did it in some cases in 2008 and 2009. In my prior experience, it sends these cases in whole, in toto. Then the district court makes a recommendation. It goes to the JPML. JPML sends it back. But to your point about did it formally split at that point, this was a conditional transfer order. This was not a final transfer order by the JPML. It was conditional transfer order 10. And so, in effect, the JPML is delegating what stays or goes to the district court, which in our view is improper. We didn't mandate this. The JPML at that point agreed. But when the district court initially determined the entire case goes, that's effectuating the JPML order. And so then when the district court reverses course and says, no, no, we're here on that appeal of that decision, and our notice of appeal said we're appealing that point of it as well. So I just wanted that to be clear to the court. Also, while I'm here, on the merits issue, they have this tender argument, and what's not the case not cited in our brief is the Curl case from the Georgia Supreme Court, which is 241 Georgia 29, 244 Southeast 2nd 812. The dissent in that case said you can't have a wrongful foreclosure claim because the person, even in poverty, even looking at her poverty, she can't tender, and yet the majority in that case said a wrongful foreclosure case can go forward. That was followed in the Cater Investments case, 290 SE 2nd 526, and the Golier, which is 291 Georgia 444. So the tender requirement, in addition to the cases we cite in our brief, is inappropriate. It seems to me this court has a decision to make. Is this final or is this not final? If it's a final order, you have jurisdiction. If it's non-final, then perhaps you don't have jurisdiction unless you invoke some type of collateral doctrine here, which this case perhaps cries out for given the manner in which JPML did this conditional transfer order. Be that as it may, it would be extremely helpful for this case further down the road if this court made clear that if this order is non-final, that it is reviewable down the road by whatever circuit this ends up in, and that for comedy's sake, whatever this court decides as to the Rule 54 and finality issue should be respected if not followed by whatever subsequent court of appeals may look at all of these issues when they merge into a final judgment. So I thank the court for its time. If it has no further questions on the merits or on jurisdiction, we appreciate this thorny issue. Okay, thank you. Thank both sides very much for their arguments. Rollins v. Mortgage Electronic Registration Systems, Inc. Submitted for decision.
judges: Tashima, Fletcher, Nguyen